## PEOPLE v. BONIFACIO.

(Supreme Court, Appellate Division, Third Department. May 8, 1907.)

1. HOMICIDE—EVIDENCE—SUFFICIENCY—ACCIDENT.

In a prosecution for murder, where defendant claimed the killing was accidental, evidence *held* sufficient to sustain a verdict of murder in the second degree.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 26, Homicide, §§ 533–537.]

2. CRIMINAL LAW—NEW TRIAL—NEWLY DISCOVERED EVIDENCE.

Under Code Cr. Proc. § 465, subd. 7, providing for a new trial on newly discovered evidence, where the alleged new evidence in a murder case was cumulative in character, and the witnesses worked on a highway with defendant, lodged in the same house with him, stood near him on the night of tragedy, and could have been interviewed, a motion for a new trial was properly overruled.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Criminal Law, §§ 2328–2330.]

3. SAME.

On a motion for a new trial, where there was no probability that any of the alleged newly discovered evidence would have changed the verdict, the motion was properly overruled.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Criminal Law, § 2336.]

Appeal from Trial Term, Montgomery County.

Giovanni Bonifacio was convicted of murder in the second degree,

and from an order denying a motion for a new trial, he appeals. Affirmed.

Argued before SMITH, P. J., and CHESTER, COCHRANE, and SEWELL, JJ.

George M. Albot and William E. Woollard, for appellant.

John S. Maxwell, Dist. Atty., and Fox Sponable, Asst. Dist. Atty., for the People.

COCHRANE, J. The defendant has been convicted of murder in the second degree for shooting to death one Ralph Di Scibio on the 7th of August, 1904. Di Scibio at that time was the proprietor of an Italian shanty near the city of Amsterdam, which shanty he occupied as a store and in which he also furnished lodgings for some Italians, including defendant, who were engaged in the construction of a highway in the immediate vicinity. There is no substantial dispute as to what occurred just before and just after the fatal shooting. Deceased and defendant quarreled over a small indebtedness owed by the latter. Deceased insisted on being paid and that defendant should leave the place. Deceased was in the store, defendant was outside, and they were talking through an open window. The deceased left the store and started in the direction of the defendant, threatening personal violence. Defendant drew from his clothing a revolver, which was discharged; the shot taking effect in the body of Di Scibio and causing his death. After the shooting defendant turned and ran. Di Scibio picked up a stone and threw it at him, proceeded for a distance of 60 or 70 feet, fell on a pile of straw, and died. Two witnesses, Gagliardi and a brother of the deceased, testified that the defendant discharged his revolver when Di Scibio was from 4 to 6 feet distant, and Gagliardi also testified that before doing so, or at about the time of doing so, he called to Di Scibio to step back or he would shoot. The defendant's version was that the deceased seized and struck him, that he then drew the revolver to frighten Di Scibio, that the latter pulled the revolver out of defendant's hands, and that in the encounter it was accidently discharged. One witness called for the defendant testified that, as deceased approached defendant, the latter called to him four times to step back, and did not take the revolver from his pocket until after he had been seized by the deceased. Another witness, who was within the store, heard defendant say four times, "Ralph, stand back!" and then heard the report of the revolver, but did not see what occurred. That is substantially all the evidence as to the homicide.

Defendant made his escape, and was arrested about 10 miles from the scene of the homicide. If, as he says, the shooting was accidental, he must have fled without knowing the fatal character of the wound, and without in fact knowing that the shot had in any way taken effect, inasmuch as there was no external bleeding, or anything to indicate to him that Di Scibio had been even slightly wounded. He admitted that the deceased was a larger man than himself, that he knew him to have a violent disposition, that he had seen him assault different individuals, and that he was afraid of him. He saw him approach,

threatening violence, but with nothing in his hands with which to execute such threat. He might have turned and fled without either receiving or inflicting an injury. Nevertheless he made no effort to do so, but stood his ground until the revolver was discharged, and then made his escape. On this evidence the jury were justified in finding that the defendant designed to effect the death of Di Scibio, and that such homicide was not a justifiable act of self-defense. Indeed, defendant does not claim that he committed the deed in self-defense, but that the shooting was accidental. The jury, on sufficient evidence, found otherwise.

Numerous criticisms are made of the charge of the learned trial justice. The charge was an eminently fair one, fully and completely safeguarding and protecting the defendant in all of his rights, and no error is discoverable therein.

About a year after the judgment herein a motion was made, on affidavits, for a new trial on the ground of newly discovered evidence. The motion was adjourned from time to time, and an order denying such motion was finally made December 24, 1906, more than two years after the judgment, and more than one year after the appeal had been taken. Defendant seeks, on appeal from the judgment, to review such order. A motion for a new trial in a criminal case can only be granted in accordance with sections 463 and 465 of the Code of Criminal Procedure. Subdivision 7 of said section 465 provides for a new trial "when it is made to appear by affidavit that upon another trial the defendant can produce evidence such as if before received would probably have changed the verdict, if such evidence has been discovered since the trial, is not cumulative, and the failure to produce it on the trial was not owing to want of diligence." Many of the authorities cited by the appellant are without application, because they were civil actions, in which such motions are not restricted by statutory provisions.

The defendant on such motion produced the affidavits of two witnesses who claimed to have seen the homicide. This alleged newly discovered evidence would tend to show that a physical encounter took place between Di Scibio and the defendant, and that the revolver was discharged during such encounter; but it also corroborates the contention of the prosecution that defendant drew the revolver before such encounter. I do not think that the failure to produce this evidence at the trial is satisfactorily explained. These new witnesses lodged with defendant at the shanty of Di Scibio. Each says that at the time of the tragedy he stood within a few feet of defendant. One was in his company on the preceding evening, when he had his first controversy with Di Scibio over the indebtedness. Defendant knew, or with the exercise of proper diligence could have ascertained, every individual engaged in the work of the highway construction. No one in his behalf sought any interview with these two witnesses, although such interview could have been had. The failure to do so, I think, was a lack of such diligence as is required by the statute; and in any event such evidence is clearly cumulative, and cannot be made the basis of a new trial under the Code provision above cited.

About all that is left of the motion is an attack on the credibility of the witness Gagliardi, on the ground that since the trial he has ad-

mitted that his testimony was untrue. The affidavits to prove such admission were made and submitted in January, 1906, at an adjourned hearing of the motion, and more than a year after the judgment, and it is doubtful whether they are entitled to any consideration, under section 466 of the Code of Criminal Procedure, which requires such a motion to be made within one year after judgment. This admission of Gagliardi, seems to have been made in a saloon conversation September 1, 1905, nearly a year after the trial. Defendant's father claims to have heard the statement; but no affidavit to that effect was presented, when the affidavits on which the motion was made were presented to the court in November, 1905. This contention seems to have been an afterthought. It also appears that the saloon keeper, who was one of the persons who claimed to have heard the admission, was also present at the homicide,.and at the time of making his affidavit was suffering incarceration for intoxication and disorderly conduct. He was orally examined on the motion, and distinctly contradicted defendant's testimony, in that he said Di Scibio was 6 or 7 feet from defendant when he saw the revolver in the hand of the latter. I am not deeply impressed with the environment from which this so-called admission of Gagliardi as to the untruthfulness of his testimony proceeds. But the defendant produced on the motion an affidavit of Gagliardi, and comparison of such affidavit with the testimony given by him at the trial does not reveal any contradiction as to any material fact. In his affidavit he makes it appear that Di Scibio had his hands on defendant and that defendant pulled himself away. He did not at the trial say that Di Scibio did not grapple with defendant. The important point of his testimony was that defendant discharged his revolver when Di Scibio was from 4 to 6 feet distant, and he in no way contradicts that in his subsequent affidavit. There may, indeed, have been a physical encounter. That is unimportant, if it took place after the shooting of Di Scibio. As some of the witnesses say the occurrence took place within a very short space of time, and, notwithstanding the fatal character of the wound, Di Scibio, after receiving the same, may have grappled with defendant, because all of the witnesses, including the defendant, say that after the discharge of the revolver Di Scibio threw a stone at the defendant, and it is conclusively established that he proceeded 60 or 70 feet before he fell. Gagliardi was not asked at the trial, and did not testify, concerning a physical encounter. He gave his testimony through an interpreter, and this feature of the case may have been accidentally omitted. It was not important from the standpoint of the prosecution. His subsequent affidavit merely establishes the unimportant fact of a physical encounter at some time, without militating against his former testimony that the shooting occurred while the two men were at a distance from each other. Had he testified to this additional fact at the trial, there is not the slightest probability that such additional evidence would have changed the verdict.

The judgment should be affirmed. All concur.